UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GREGORIO SOTO,

                      Plaintiff,

      — against —

FEDERAL EXPRESS CORPORATION
d/b/a FEDEX,

                      Defendant.
-----------------------------------------------------------X

**MEMORANDUM and ORDER**

06-CV-5413 (SLT)(KAM)

**TOWNES, United States District Judge**[1]**:**

      Plaintiff, Gregorio Soto ("Plaintiff" or "Soto"), brings this action against his former employer, defendant Federal Express Corporation ("FedEx" or "Defendant"), alleging breach of contract and loss of reputation as a result of his termination. Defendant now moves for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. In addition, by a separate motion, Defendant moves for sanctions because it claims the action is frivolous. For the reasons set forth below, Defendant's motion for summary judgment is granted, and the motion for sanctions is denied.

---

    [1] The Court wishes to acknowledge the capable assistance of a student intern, Vera Zolotaryova of Brooklyn Law School, in the preparation of this Memorandum and Order.

## BACKGROUND[2]

In October 1990, Plaintiff applied to work for FedEx, and was initially hired as a Cargo Handler in February 1991. Subsequently, he was promoted over the succeeding eight years from Cargo Handler to Courier, then to Station Lead, and finally, from Station Lead to Operations Manager in 1999. Prior to his termination on July 11, 2003, Plaintiff served as an Operations Manager for approximately 6½ years.

Plaintiff did not have a contract of employment while working for FedEx. When he initially applied to work for FedEx in October 1990, he executed an Employment Agreement, which provided, in part, that Plaintiff understood that his employment was indefinite in duration, his employment and compensation could be terminated at any time without cause or notice of liability, and that no person at FedEx – other than the Chief Executive Officer or Senior Vice President – could enter into an employment agreement with him. *See* Deposition of Gregorio Soto ("Soto Depo."), pp. 75-77, Exh. 8 thereto. In addition, the Employment Agreement states: "Nothing in this agreement or any other communication from the Company shall abrogate this employment-at-will status." *Id*. Pursuant to the Employment Agreement, Plaintiff agreed to

---

[2] The following facts are elucidated from the affidavits, exhibits, and Local Rule 56.1 statements submitted by the parties. However, Plaintiff's "Statement of Material Facts Not in Dispute in Support of Plaintiff's Memorandum of Law in Opposition to Summary Judgment" (hereinafter, "Plaintiff's Rule 56.1 Statement"), although containing numbered paragraphs, fails to include "a correspondingly numbered paragraph *responding to each numbered paragraph in the statement of the moving party*." Local Civil Rule 56.1(b) (emphasis supplied). Since "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and may "opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement," the Court will disregard Plaintiff's error to the extent possible. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal citations and quotation marks omitted). Yet, to the extent that Plaintiff has completely failed to address a statement in Defendant's Rule 56.1 Statement, it will be admitted for purposes of this motion. *See* Local Rule 56.1(c) (providing that "[e]ach numbered paragraph" in the movant's Rule 56.1 Statement "will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required be served by the opposing party.").

"comply with the guidelines established in the Company's rules, regulations and procedures, which I understand shall be amended from time to time." *Id.*[3]

During Plaintiff's employment with FedEx, the company distributed several versions of the Federal Express Employee Handbook (the "Employee Handbook"), to all new employees in 1991, and thereafter distributed updated versions in 1993, 1996, and 2002. *See* Declaration of Samuel L. Nesbit dated August 24, 2007 ("Nesbit Decl.") ¶¶ 3-4. Although all employees should have received each edition of the Employee Handbook, Plaintiff only recalls receiving a copy of the Employee Handbook when he began working at FedEx in February 1991. *See* Soto Depo., pp. 78-84; Nesbit Decl. ¶¶ 3-4. The second page of the 1996 Employee Handbook includes a disclaimer that states: "The [Employee Handbook] is not a contract of employment, nor should its provisions be read or implied to provide for one. Your specific rights are governed by the Employment Agreement you signed in your employment application." Defendant's Rule 56.1 Statement ¶ 4.[4]

Also, Plaintiff acknowledges that, on at least three separate occasions, he signed a receipt form indicating that he received a copy of the Employee Handbook ("Record of Receipt") in 1991, 1993, and 2002. *See* Soto Depo., at pp. 78-84, Exhs. 6a, 6b, 7. The exact language of

---

[3] The Court notes that the language in the Employment Agreement annexed to Plaintiff's deposition transcript differs slightly, but not materially, from the excerpt of the same agreement contained in Defendant's Rule 56.1 Statement. *Compare* Soto Depo., Exh. 8 thereto *and* Defendant's Rule 56.1 Statement ¶ 2. As such, the Court will rely upon the Employment Agreement annexed to Plaintiff's deposition.

[4] Although Defendant quotes a portion of the 1996 Employee Handbook – and Plaintiff does not dispute the accuracy of this quote – Defendant has nonetheless failed to provide the Court with a copy of the 1996 Employee Handbook, or any Employee Handbook for that matter. Plaintiff, however, did provide a copy of an undated Employee Handbook, *see* Plaintiff's Exh. M, but that copy is notably missing pages numbered "2" and "3". In any event, the claim that the Employee Handbook included this disclaimer remains undisputed.

each Record of Receipt differs, but they all state that signing the form indicates that the employee understands that the Employee Handbook is not a contract of employment. *See id*. In particular, the 1993 Record of Receipt repeats the same language as the above-quoted disclaimer in the 1996 Employee Handbook. *See* Soto Depo., p. 79, Exh. 6b. Also, by signing the 1993 Record of Receipt, Plaintiff acknowledged that he "understand[s] that [the Employee Handbook] contains guidelines only." *Id*.

In addition to the Employee Handbook, during Plaintiff's employment, FedEx maintained a document known as the "People Manual," which contained the policies and procedures applicable to FedEx employees. Nesbit Decl. ¶ 5. FedEx regularly updated the People Manual, and at the time of Plaintiff's termination, the 2006 People Manual was in effect. Page *xi* of the 2006 People Manual included the following provision:

> This manual is intended solely as a guide for management and employees during employment. It is not a contract of employment, and no such contract may be implied from its provisions. Nothing in this manual shall be construed to abrogate the employment agreement signed upon application for employment preserving the Company's and the employee's right to terminate this relationship at the will of either party.

*Id*. ¶ 6; Defendant's Rule 56.1 Statement ¶ 8.[5] The People Manual also outlined a FedEx procedure that enabled employees to challenge various management decisions, including termination decisions, known as the Guaranteed Fair Treatment Procedure ("GFTP"). Nesbit Decl. ¶ 13. As Operations Manager, Plaintiff consulted the People Manual, including the GFTP,

---

[5] Although the parties do not dispute that the 2006 People Manual includes this provision, Defendant has not provided the Court with any version of the People Manual. Plaintiff, however, has provided portions of the 2006 People Manual, but none of these portions include the quoted provision. *See* Plaintiff's Exhs. N and O.

to ensure that he acted according to FedEx policy when disciplining other employees. *See* Declaration of Gregory Soto, sworn to November 9, 2007 ("Soto Decl.") ¶ 4. Plaintiff states that, upon becoming a manager, he was instructed to strictly follow FedEx policy regarding discipline and dismissal since no employee can be disciplined or discharged without just cause. *See* Soto Decl. ¶ 3. Plaintiff further states that he relied on his managers' representations that no employee can be fired without cause. *See id.* ¶ 5.

On March 1, 2005, Plaintiff received a memorandum from his Senior Manager, George Thomas, instructing him to review the changes to FedEx's policy against falsification of records, which designated a deliberate violation of such policy as grounds for termination. *See* Defendant's Rule 56.1 Statement ¶ 9; Soto Depo., pp. 63-65, Exh. 10h thereto. During the remainder of 2005 and part of 2006, Plaintiff was given several written warnings and reminders regarding violations of various FedEx policies, including having too many "service failures" (*i.e.*, failures to timely deliver packages) on a daily basis. *See* Defendant's Rule 56.1 Statement ¶ 9; Soto Depo., pp. 67-70, Exhs. 10i - 10n thereto. In February 2006, Plaintiff was questioned by two supervisors – Mr. Thomas and Samuel Nesbit, Plaintiff's Managing Director – regarding inappropriate computer entries ("DEX scans") associated with packages that were delivered from his station. *See* Defendant's Rule 56.1 Statement ¶ 11; Nesbit Decl. ¶ 15. During this interrogation, Plaintiff admitted that he had, contrary to FedEx policy, manually entered DEX scans on packages that otherwise would have been considered "service failures" to make it appear that no service failure had occurred. *See* Defendant's Rule 56.1 Statement ¶ 11; Nesbit Decl. ¶ 15. At that point, Plaintiff's supervisors instructed him to cease entering false DEX

scans and reviewed FedEx policy with him. *See* Defendant's Rule 56.1 Statement ¶ 11; Nesbit Decl. ¶ 15.

On July 11, 2006, Plaintiff's employment with FedEx was terminated for leadership failure. *See* Defendant's Rule 56.1 Statement ¶ 12; Nesbit Decl. ¶ 12. Defendant claims that Plaintiff was terminated because he was aware of the improper DEX scans, and he refused to cooperate with a related security investigation. *See* Defendant's Rule 56.1 Statement ¶ 12; Nesbit Decl. ¶ 12. After Mr. Nesbit was informed of policy violations at Plaintiff's station, he arranged for his security team to investigate the matter. *See* Defendant's Rule 56.1 Statement ¶ 13; Deposition of Samuel Nesbit ("Nesbit Depo."), pp. 32-34. The investigation revealed that two FedEx employees – Ahmad Shafi and Fausto Alvarez – had entered, on numerous occasions, DEX codes to alter the delivery times of packages that they did not personally deliver. *See* Defendant's Rule 56.1 Statement ¶¶ 14-15; Nesbit Depo., pp. 34-35, 44-45. When questioned, Shafi and Alvarez stated that they had been directed to manually enter the DEX codes by Plaintiff and another manager, Andre Hemraj.[6] *See* Defendant's Rule 56.1 Statement ¶ 15; Nesbit Depo., pp. 48.

On June 12, 2006, Plaintiff was interviewed by the security investigators, and following the interview, Plaintiff was asked to prepare and sign a written statement restating his testimony. *See* Defendant's Rule 56.1 Statement ¶ 18; Soto Depo., pp. 21, 85. Plaintiff refused to produce the written statement and opined that his recorded testimony should be used as his written

---

[6] Mr. Hemraj was also terminated by FedEx, which prompted him to also commence an action in the Eastern District against FedEx, premised on the same theories of liability as Plaintiff has raised herein. On October 25, 2007, Judge Carol Amon granted FedEx's motion for summary judgment and dismissed Mr. Hemraj's action. *See Hemraj v. Federal Express Corp.*, No. 06-CV-5414, 2007 WL 3124553 (E.D.N.Y. Oct. 25, 2007).

statement. Soto Depo., pp. 85-87. Although FedEx policy, at that time, dictated that Plaintiff's refusal to provide a written statement would constitute a failure to cooperate with a security investigation, and could result in discipline, including termination, *see* Nesbit Decl. ¶ 12, Plaintiff claims that he was unaware of the "mandatory" nature of the written statement. Soto Decl. ¶ 9. In accordance with FedEx policy, on June 26, 2006, Plaintiff was suspended by his new Senior Manager, Ramona Oliver, pending further investigation into the DEX code falsification. *See* Defendant's Rule 56.1 Statement ¶ 19; Soto Depo., p. 24. Following his suspension, Plaintiff submitted a statement to Ms. Oliver disputing the facts supporting the suspension. Soto Decl. ¶ 10; Soto Depo., pp. 123-125, Exh. 11 thereto. Thereafter, on July 11, 2006, FedEx notified Plaintiff that his employment was being terminated for leadership failure. *See* Defendant's Rule 56.1 Statement ¶ 20; Soto Depo., p. 26, Exh. 10 thereto.

Through FedEx's three-step GFTP, Plaintiff appealed his termination. *See* Defendant's Rule 56.1 Statement ¶ 21; Nesbit Decl. ¶ 13. Plaintiff was provided a hearing and Mr. Nesbit personally interviewed all of the employees involved in the DEX falsification matter. Plaintiff's termination was upheld at each level. *See* Defendant's Rule 56.1 Statement ¶¶ 21-23; Nesbit Decl. ¶¶ 14-19.

On August 30, 2006, Plaintiff initially commenced this action in the Supreme Court of the State of New York, County of Queens, but, on October 10, 2006, it was removed to this Court on Defendant's motion. Plaintiff asserts two causes of action against Defendants: (1) breach of an express and implied contract by firing him without cause; and (2) loss of reputation as a result of his wrongful termination. Although Plaintiff admits that he never had an employment contract for a definite period of time with Defendant, he claims that a quasi

7

employment contract was created based upon Defendant's written statements in the Employee Handbook and People Manual, as well as upon oral representations regarding the termination process. According to Plaintiff, Defendant breached this quasi contract by failing to adhere to its own policies and procedures and by terminating Plaintiff without cause, which caused Plaintiff to suffer a loss of reputation. Defendant now moves for summary judgment on both causes of action.

## DISCUSSION

*A.     The Summary Judgment Standard*

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)*; see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World*, 922 F.2d at 121 (internal quotation marks and citations omitted). Moreover, the non-movant cannot rely on hearsay testimony which would not be admissible if testified to at trial. Fed. R. Civ. P. 56(e); *see Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999). When evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable

8

inferences in his favor." *L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

*B.    Breach of Contract*

Under New York law,[7] it is well-established that "absent an agreement establishing a fixed duration, an employment relationship is presumed to be hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333, 506 N.E.2d 919, 920, 514 N.Y.S.2d 209, 211 (1987) (internal citation omitted); *see also Baron v. Port Authority of New York and New Jersey*, 271 F.3d 81, 85 (2d Cir. 2001); *Horn v. New York Times*, 100 N.Y.2d 85, 90-91, 790 N.E.2d 753, 755, 760 N.Y.S.2d 378, 380 (2003). However, an employee may rebut the presumption of employment at will by establishing that the employer has expressly limited its right to terminate an at-will employee. *See Sabetay*, 69 N.Y.2d at 336, 506 N.E.2d at 922, 514 N.Y.S.2d at 213; *Miller v. Huntington Hosp.*, 15 A.D.3d 548, 549, 792 N.Y.S.2d 88, 89 (App. Div. 2d Dep't 2005); *see also Demicco v. Home Depot USA*, 101 F. Supp. 2d 122, 125 (E.D.N.Y. 2000).

New York courts have found that in certain circumstances, language in an employment manual handbook, or other company document, may be relied upon to establish a limitation on the right to terminate an at-will employee. *See Lobosco v. N.Y. Tel. Co./NYNEX*, 96 N.Y.2d 312, 316-17, 751 N.E.2d 462, 465-66, 727 N.Y.S.2d 383, 386-87 (2001); *Weiner v. McGraw-Hill*, 57

---

[7] Since this case is premised on diversity jurisdiction, and neither party disputes that the law of the forum state applies, this Court will apply New York law. *See Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000) (the court saw "no reason not to apply New York law" where "[t]he parties have clearly, if tacitly, agreed that New York law governs this litigation" and "in light of the plaintiff's residence in New York."); *Connecticut Indem. Co. v. 21st Century Transport Co., Inc.,* 186 F. Supp. 2d 264, 269 (E.D.N.Y. 2002) ("[T]he parties rely on New York law in their submissions, and, given the connections New York has to this lawsuit, there is no reason for the Court not to apply New York law.").

N.Y.2d 458, 465-66, 443 N.E.2d 441, 445, 457 N.Y.S.2d 193, 197 (1982). To establish that these policies constitute an express limitation and create an implied employment contract, a plaintiff must demonstrate that "(1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment." *Baron*, 271 F.3d at 85 (citing *Lobosco*, 96 N.Y.2d at 316, 751 N.E.2d 462, 727 N.Y.S.2d 383); *see also Weiner*, 57 N.Y.2d at 465-66, 443 N.E.2d at 445, 457 N.Y.S.2d at 197. In addition, when deciding whether an express limitation exists, courts have differentiated between "nonbinding" general statements of policy or supervisory guidelines and express commitments in "mandatory and unqualified terms." *Mycak v. Honeywell, Inc.,* 953 F.2d 798, 801-02 (2d Cir. 1992). This distinction is necessary since "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." *Lobosco*, 96 N.Y.2d at 317, 751 N.E.2d at 465, 727 N.Y.S.2d at 386. As noted by New York's highest court, rebutting a presumption of at-will employment is a heavy burden. *See id*.

Here, it is clear that Plaintiff was an at-will employee since he explicitly concedes that he did not have a contract with a fixed duration of employment. As a result, Plaintiff's breach of contract claim must be dismissed unless he can "demonstrate a limitation by express agreement on his employer's right to terminate at will." *Sabetay*, 69 N.Y.2d at 336, 506 N.E.2d at 922, 514 N.Y.S.2d at 213. In this regard, Plaintiff relies upon both the Employee Handbook and the People Manual to establish a limitation upon his employer's right to terminate him. Plaintiff argues that Defendant's termination rights were limited by its assurances of equal opportunity

10

and fairness, as repeatedly affirmed by his supervisors and as conveyed by the Employee Handbook's specific policies and regulations regarding termination and discipline. Plaintiff also argues that the GFTP provisions in the People Manual, which consists of a three-step level of review for any form of employee discipline, created an express limitation on Defendant's right to terminate him without cause.

In support of his claims, Plaintiff relies heavily upon three cases that are simply inapposite, namely *Weiner*, *supra*, *Marfia v. T.C. Ziraat Kankasi*, 147 F.3d 83 (2d Cir. 1998), and *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847 (2d Cir. 1985). In *Weiner* and *Marfia*, each court held that the language in the employer's respective employee handbook constituted an express written limitation on the employer's right to terminate an at-will employee because the handbooks explicitly provided that dismissal was limited to the employer finding just cause. *Weiner*, 57 N.Y.2d at 460-61, 443 N.E.2d at 442-43, 447 N.Y.S.2d at 194-95; *Marfia*, 147 F.3d at 88. Similarly, in *Gorrill*, the court found that language in the operations manual, providing that "seniority will be the sole factor for determining demotions, transfers, and termination," amounted to an express limitation. *Gorrill*, 761 F.2d at 850.

However, all three of these cases involved publications that included language markedly different from the language found in the publications at issue here. Whereas the employers in *Weiner* and *Marfia* explicitly stated that they would only terminate an employee for just cause, *Weiner*, 57 N.Y.2d at 460-61, 443 N.E.2d at 442-43, 447 N.Y.S.2d at 194-95; *Marfia*, 147 F.3d at 88, Defendant's Employee Handbook and People Manual specified that employees could only be terminated at will. Moreover, unlike the manual in *Gorrill*, the Employee Handbook and People Manual here include unambiguous disclaimers that demonstrate that Defendant did not

11

expressly limit its right to terminate Plaintiff.  *See Baron*, 271 F.3d at 88; *Lobosco*, 96 N.Y.2d at 316-17, 751 N.E.2d at 465, 727 N.Y.S.2d at 386.

Plaintiff also relies upon Defendant's implementation of the GFTP as evidence of an express limitation.  However, several courts in this Circuit have previously concluded that FedEx's GFTP does not constitute an express limitation on its ability to terminate employees at will.  *See, e.g., Leahy v. Fed. Express Corp.*, 609 F. Supp. 668, 672 (E.D.N.Y. 1985); *Aquinas v. Fed. Express Corp.*, 940 F. Supp. 73, 80 (S.D.N.Y. 1996); *Montalvo v. Fed. Express Corp.*, No. 94 CIV. 7858, 1995 WL 733600, at *2 (S.D.N.Y. Dec. 11, 1995); *Cowan v. Fed. Express Corp.*, 25 F. Supp. 2d 33, 37 (D. Conn. 1998).  Plaintiff has offered nothing to call these decisions into question – except that he was a manager utilizing the GFTP instead of a rank-and-file employee, a distinction that has been held to be insufficient, *see Hemraj*, 2007 WL 3124553, at *5; *Cowan*, 25 F. Supp. 2d at 37.  This Court also holds that the GFTP fails to constitute an express limitation on Plaintiff's at-will employment status.

Similarly, the oral statements of Plaintiff's supervisors fail to constitute an express limitation.  Plaintiff argues that an implied contract was created because his manager, Samuel Nesbit, had assured him that FedEx employees could only be terminated for cause.  However, Plaintiff's reliance on alleged oral assurances of continued employment does not create a contractual limitation because oral assurances of employment only support an express written limitation but do not in and of themselves create such a limitation.  *See Leahy*, 609 F. Supp. at 672; *see also Baron*, 271 F.3d at 85 n. 2 (quoting *Skelly v. Visiting Nurse Assoc. of Capital Region, Inc.*, 210 A.D.2d 683, 684, 619 N.Y.S.2d 879, 881 (App. Div. 3rd Dep't 1994)).

The documents and testimony presented by Plaintiff in opposition to this motion for summary judgment are insufficient to create an implied employment contract. Plaintiff was an at-will employee, and neither the publications nor Plaintiff's managers' statements created a contractual obligation that altered his at-will status. Accordingly, Plaintiff's breach of contract claim is dismissed.

C. *Loss of Reputation*

Defendant also moves to dismiss the second cause of action in the complaint, which seeks to hold Defendant liable for Plaintiff's loss of reputation as a result of his wrongful termination. It is well-settled in New York that a claim for loss of reputation arising from a breach of contract is not actionable. *See Smith v. Positive Productions*, 419 F. Supp. 2d 437, 453 (S.D.N.Y. 2005) (citing *MacArthur Const. Corp. v. Coleman*, 91 A.D.2d 906, 906, 457 N.Y.S.2d 530, 531 (App. Div. 1st Dep't 1983)). Moreover, to the extent that Plaintiff seeks to assert a loss of reputation claim independent of his alleged contract of employment, such a claim is also not actionable in New York. *See Menaldi v. Pay-Per-View Network, Inc.*, No. 97 Civ. 6451, 1998 WL 230994, *2 (S.D.N.Y. May 5, 1998); *Baum v. Phillips, Appel & Walden, Inc.*, 648 F. Supp. 1518, 1537 (S.D.N.Y. 1986). Instead of existing as an independent cause of action, damage to one's reputation is encompassed in other, more specific causes of action, such as defamation, libel, or slander. *See Hemraj*, 2007 WL 3124553, at *6. Accordingly, Plaintiff's loss of reputation claim is dismissed.

D. *Sanctions*

Defendant previously moved for summary judgment dismissing Plaintiff's causes of action by separate motion, which this Court has granted. By motion dated October 12, 2007,

Defendant now seeks sanctions pursuant to Fed. R. Civ. P. 11, arguing that sanctions should be imposed upon "Plaintiff and Plaintiff's counsel" for commencing this allegedly frivolous action. Rule 11 provides that an attorney presenting a paper or advocating an argument to the court certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2). "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir.1994) (internal quotation marks and citations omitted).

      Defendant's motion for sanctions is denied. Although Defendant is entitled to summary judgment, given that Plaintiff's claims are untenable under current law, Plaintiff's claims hardly attain the degree of frivolity prohibited by Rule 11. *See Gurary v. Winehouse*, 235 F.3d 792, 797-98 (2d Cir. 2000) ("the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions . . . should certainly be taken into account in determining whether paragraph [(b)](2) has been violated.") (quoting Fed. R. Civ. P. 11(b) advisory committee note (1993)). Nonetheless, like Judge Amon – in *Hemraj*, 2007 WL 3124553, where she admonished Plaintiff's counsel for commencing an action asserting similar claims brought on behalf of another former FedEx employee – this Court is compelled to

14

similarly warn Plaintiff's counsel against wasting precious judicial resources in deciding these motions.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety, and Defendant's motion for sanctions is denied. Therefore, the Clerk of Court is directed to enter judgment in favor of Defendants, dismissing this action.

SO ORDERED.

Dated: Brooklyn, New York
January 31, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge